# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CONSUMERS' CHECKBOOK, CENTER FOR THE STUDY OF SERVICES<br>1625 K Street, NW, 8th Floor<br>Washington, DC 20006 | : : : : : | |
| Plaintiff, | : | CASE NO. _____ |
| v. | : : | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Centers for Medicare and Medicaid Services<br>7500 Security Boulevard<br>Baltimore, MD 21244 | : : : : : : | |
| and<br>MICHAEL O. LEAVITT in his official capacity as Secretary of Health and Human Services<br>200 Independence Avenue, SW<br>Washington, DC 20201 | : : : : : : | |
| and<br>LESLIE V. NORWALK in her official capacity as Administrator (Acting)<br>Centers for Medicare and Medicaid Services<br>7500 Security Boulevard<br>Baltimore, MD 21244 | : : : : : : : | |
| Defendants. | : : | |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      This is an action under the United States Freedom of Information Act ("FOIA"), 5

U.S.C. § 552 et seq., to compel defendants to produce certain Medicare claim records compiled

and maintained electronically by the United States Department of Health and Human Services

("HHS"), Centers for Medicare and Medicaid Services ("CMS").

2.     CMS maintains, in an electronic records system known as the National Claims

History ("NCH"), claims submitted by physicians seeking reimbursement for medical services

performed under the Medicare program.  These claims records are of significant public

importance as they provide information about the services that are purchased under the Medicare

program, how CMS administers the Medicare program, and whether Medicare recipients are

receiving medical services that meet quality standards.

3.     Defendants have violated the plaintiff's statutory rights under the FOIA by:

(a) denying its request for certain Medicare claims records on the grounds that CMS does not

maintain the specified records, while at the same time admitting that the records are maintained

in the NCH; (b) misconstruing 5 U.S.C. § 552(a)(3)(B) as a complete bar to the production of the

requested records, although this provision only governs the *format* in which records will be

produced, and not the underlying question of whether records may be produced; and (c) failing to

respond to plaintiff's timely appeal of the agency's denial of its request.

JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B).

5.     Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B).

PARTIES

6.     Plaintiff, Consumers' CHECKBOOK/Center for the Study of Services ("CSS"), is

incorporated as a not-for-profit organization in Washington, D.C. and has its principal place of

business in Washington, D.C.  CSS publishes Consumers' CHECKBOOK magazine, a consumer

information guide, on a subscriber basis in the following general metropolitan areas:

Washington, DC, Boston, Philadelphia/Delaware Valley, Chicago, Minneapolis/St. Paul,

Seattle/Tacoma, and San Francisco Bay Area.  CSS also publishes the Guide to Top Doctors; the

Guide to Health Plans for Federal Employees; and the Consumers' Guide to Hospitals.

7.      Defendant the Department of Health and Human Services ("HHS") is a United

States government agency established pursuant to 5 U.S.C. § 101 and 42 U.S.C. § 3501.  HHS is

an "agency" within the meaning of 5 U.S.C. § 552(f).  CMS, previously known as the Health

Care Financing Administration, was organized in 1977 pursuant to the authority of the Secretary

of HHS, previously known as Health, Education and Welfare ("HEW"), as a principal operating

component under HHS.  See Department of Health, Education, and Welfare, Office of the

Secretary, Health Care Financing Administration et al., Reorganization Order, 42 Fed. Reg.

13262 (March 9, 1977).

8.      Defendant Michael O. Leavitt is the Secretary of HHS; he is sued in his official

capacity.

9.      Defendant Leslie V. Norwalk is the Administrator (Acting) of CMS; she is sued

in her official capacity.

<u>CAUSE OF ACTION</u>

10.      On or about March 27, 2006, plaintiff, through its President, Robert Krughoff,

mailed to the CMS Freedom of Information Group a written request for the production of a

specified subset of the "Medicare claim records compiled and maintained electronically by

CMS...."  Plaintiff requested the information "as it is maintained at CMS."  Plaintiff's request

was expressly made pursuant to the Freedom of Information Act.  A copy of plaintiff's March 27

FOIA request, subsequently labeled Request No. C06FOI1318 by CMS, is attached as Exhibit A.

11.    In the FOIA request, plaintiff explicitly stated that it was not requesting any data that would specifically identify any Medicare beneficiaries, and requested that CMS contact the plaintiff if CMS believed that the request would nonetheless implicate patient privacy issues. CMS did not raise any privacy issues in response to the FOIA request.

12.    Under 5 U.S.C. § 552, the public is entitled to receive all public records except those that are expressly exempted by statute.

13.    By letter dated June 26, 2006, the Director of the Freedom of Information Group of CMS, Mr. Michael Marquis, wrote to plaintiff explaining that plaintiff's request for specific Medicare claims records was denied on two grounds.  First, CMS explained that "the agency does not maintain a record that is responsive to your request."  Second, CMS asserted that "under FOIA, we are not required either to create records or to <u>furnish information in a particular form or format when a record in such form or format is not readily reproducible employing reasonable efforts</u>. 5 U.S.C. § 552(a)(3)(B)."  (emphasis in original)  A copy of Director Marquis' June 26 letter is attached as Exhibit B.

14.    By letter dated July 25, 2006, plaintiff appealed Director Marquis' June 26 ruling to the Deputy Administrator of CMS.  Plaintiff's appeal stated two grounds for reversing the Director's denial.  First, CMS admitted in the June 26 denial letter that the agency does, in fact, maintain the requested information in a single electronic database.  CMS explained that the requested records are "maintained electronically by CMS in the National Claims History (NCH) files," and that the requested records could be retrieved in approximately two weeks.  CMS's own internal policies clarify that extracting a subset of information from an existing record or database (such as the NCH) is <u>not</u> considered creating a new record.  Second, 5 U.S.C. § 552(a)(3)(B) does not provide a legal basis for denying a FOIA request.  Rather, 5 U.S.C. §

552(a)(3)(B) provides that an agency shall provide records to a requestor in any "form or format requested by the person if the record is readily producible by the agency in that form or format." This provision presumes that records will be produced under the FOIA, and only governs the *format* of the production. Plaintiff requested the information "as it is maintained at CMS," and CMS may not rely on this statutory provision to completely deny the request. A copy of the July 25 appeal letter is attached as Exhibit C.

15.     By letter dated August 1, 2006, Director Marquis acknowledged receipt of the July 25 appeal. A copy of the August 1 letter is attached as Exhibit D.

16.     Under 5 U.S.C. § 552(a)(6)(A)(ii), an agency must make a determination with respect to an appeal within twenty (20) working days. The agency's determination regarding plaintiff's appeal dated July 25, 2006 was statutorily required to be completed on or around August 22, 2006.

17.     Although 5 U.S.C. § 552(a)(6)(B)(i) provides for an extension of time limits for appeal determinations in "unusual circumstances," such extensions for appeals are limited to ten (10) working days. A time extension under this subsection would have expired on or about September 6, 2006.

18.     The agency has not issued a determination regarding plaintiff's appeal, and therefore has failed to comply with the applicable time limit provisions of the FOIA.

19.     Plaintiff has exhausted its administrative remedies, pursuant to 5 U.S.C. § 552(a)(6)(C)(i), in that plaintiff has filed all specified appeals and the agency has failed to respond within the time limits designated by statute, and plaintiff elects to exercise its right, pursuant to 5 U.S.C. § 552(a)(4)(B), to bring suit in the United States District Court for the

District of Columbia to enjoin defendants from withholding the information sought and to compel the production of the information sought.

20.     Plaintiff has a strong interest in prompt access to the requested information, and the public interest in this information is of great magnitude.  In connection with the administration of the Medicare program, questions have been raised as to whether the medical services provided to Medicare beneficiaries are of sufficient quality given the cost of such services, and whether CMS is meeting its duties in administering the program.

21.     The information requested is essential to assess cost and quality issues relevant to the Medicare program, and to assess HHS's performance of its statutory duties with regards to the administration of the Medicare program.

22.     This information is a matter of serious, legitimate, public concern.

23.     The withholding of this information by defendants is not supported by 5 U.S.C. § 552(a)(3)(B), nor any exemptions under 5 U.S.C. § 552(b).  Therefore, plaintiff is entitled, pursuant to 5 U.S.C. § 552(a)(2), to receive production of the information sought through its FOIA request.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff respectfully prays that the Court:

(1)     Enjoin defendants, their agents, officers and employees from withholding the information that plaintiff has requested and order defendants to produce the requested information.

(2)     Grant plaintiff its reasonable attorney fees and other costs of this litigation, as provided under 5 U.S.C. § 552(a)(4)(E); and

(3)     Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Patrick Carome (D.C. Bar No. 385676)
Stephen Albrecht (D.C. Bar No. 481871, D.C.
District Court Bar application pending)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 663-6000
Fax: (202) 663-6363

*Counsel for Plaintiff Consumers'*
*CHECKBOOK, Center for the Study of Services*

Date: December 22, 2006

# Exhibit A



Center for the
Study of Services

March 27, 2006

**By Certified U.S. Mail**

Centers for Medicare & Medicaid Services (CMS)
Office of Strategic Operations and Regulatory Affairs
Freedom of Information Group
Room N2-20-16
7500 Security Boulevard
Baltimore, Maryland 21244-1850

Dear Sir or Madam:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, *et seq.* and corresponding regulations, Consumers' CHECKBOOK/Center for the Study of Services ("CHECKBOOK/CSS") hereby requests certain Medicare claims records compiled and maintained electronically by CMS in the Carrier SAF files (previously known as the Physician/Supplier Part B files). We request only a subset of the data elements from those records, listed in Attachment A of this letter. We also limit our request to:

1)  Data records for Calendar Year 2004;
2)  Data records generated from physician claims; and
3)  Data records for which the Line NCH Provider State Code is DC, IL, MD, WA or VA.

We request this data as it is maintained at CMS, and ask that it be supplied on 3490E IBM Standard label tape cartridges, DVD, or USB hard drive. We would like to receive the data in EBCDIC format, compressed, and preferably divided into individual files for each state requested.

**Privacy Issues**

We understand that there may be concerns regarding Medicare beneficiary privacy associated with these data records. We are not requesting any data that directly identifies beneficiaries. If CMS believes that the requested data may nonetheless raise beneficiary identification or patient privacy concerns in any specific instances, please

Publisher of *Consumers'*
*CHECKBOOK* magazines

1625 K Street, NW, 8th Floor
Washington, DC 20006

Phone: 800-213-7283
Fax: 202-347-4000

contact me so that we may discuss methods to protect beneficiary privacy while still providing the data that we request.

Additionally, we understand that CMS has previously relied on FOIA Exemption 6, 5 U.S.C. § 522(b)(6), as a justification for withholding physician identifying data on personal privacy grounds. We respectfully disagree with this assessment, and draw your attention to Public Citizen Health Research Group v. Dept. of Health, Education and Welfare, 477 F.Supp. 595 (D.D.C. 1979), rev'd on other grounds, 668 F.2d 537 (D.C. Cir. 1981), which squarely addressed this issue. In that case, District Court Judge Gesell balanced physician privacy interests against the public interest in receiving physician specific information that would provide a quality check on the performance of the Medicare and Medicaid programs. Judge Gesell held that, on balance, the public interest outweighed the privacy interest requiring disclosure of the information.[1] Id. at 604-5. Nonetheless, if CMS believes it has grounds to withhold the requested physician identifying information, I ask that you contact me to discuss the issue prior to proceeding with this matter, as the physician identifying information is essential to our request.

**Request for Fee Waiver**

CHECKBOOK/CSS is a non-profit 501(c)(3) organization dedicated to conducting and supporting studies of consumer services (including services provided to consumers through government programs) and providing public benefit by publishing reports that educate consumers about such services. We believe that the provision of the requested information is in the public interest because, through our analysis of the requested data and our publication of findings, we will contribute significantly to the public's scrutiny of the operations and performance of CMS and the Medicare program. The commercial interests of CHECKBOOK/CSS are not primary to this request. Therefore, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 45 C.F.R. § 5.45, we request that any fees associated with this request be waived. If you should determine that fees will not be waived, I ask that you contact me prior to providing the requested records to discuss the anticipated fees.

---

[1] Even though Public Citizen was decided prior to the Supreme Court's landmark decision in U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989), Judge Gesell followed the appropriate analysis required under Reporters Comm. by considering public benefits derived from the scrutiny of an agency and its performance, which are "at the core of FOIA." 477 F.Supp. at 604.

Consistent with 45 C.F.R. § 5.35, I would appreciate a response within 10 working days of receipt of this request. If you would like to discuss any issues related to this request, please contact me at (202) 454-3003. Thank you for your assistance.

Sincerely,

Robert Krughoff
President, CHECKBOOK/CSS

Enclosure

cc:    Stephen Albrecht, Esq.
       Wilmer Cutler Pickering Hale and Dorr LLP

**Attachment A**

Data elements requested from the Carrier SAF files:

Claim Through Date (Year/Quarter)
Carrier Number
CWF Beneficiary Medicare Status Code
Claim Principal Diagnosis Code
Carrier Claim Payment Denial Code
Claim Excepted/Non-Excepted Medical Treatment Code
Carrier Claim Provider Assignment Indicator Switch
Carrier Claim Referring PIN Number
Care Plan Oversight (CPO) Provider Number
Carrier Claim Diagnosis Code Count
Carrier Claim Line Count
Claim Diagnosis Code
Carrier Line Performing PIN Number
Carrier Line Performing UPIN Number
Line NCH Provider State Code
Line HCFA Provider Specialty Code
Line Provider Participating Indicator Code
Carrier Line Reduced Payment Physician Assistant Code
Line Service Count
Line HCFA Type Service Code
Line Place of Service Code
Line Last Expense Date (Year/Quarter)
Line HCPCS Code
Line HCPCS Initial Modifier Code
Line HCPCS Second Modifier Code
Line NCH BETOS Code
Line Beneficiary Primary Payer Code
Line Processing Indicator Code
Line Diagnosis Code

# Exhibit B

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop N2-20-16
Baltimore, Maryland 21244-1850



CENTERS for MEDICARE & MEDICAID SERVICES

## Office of Strategic Operations and Regulatory Affairs/Freedom of Information Group

Refer to:  C06FOI1318 (KJ)

JUN 2 6 2006

Robert Krughoff
Center for the Study of Services
1625 K Street, NW, 8th Floor
Washington, DC 20006

Dear Mr. Krughoff:

This is in response to your Freedom of Information request dated March 27, 2006,
seeking access to Medicare claims records compiled and maintained electronically by
the Centers for Medicare & Medicaid Services (CMS) in the Carrier SAF files
(previously known as the Physician/Supplier Part B files).  You requested a subset of
the data elements from the Carrier SAF files.  You limited your request to: data
records for Calendar Year 2004; data records generated from physician claims and;
data records for which the Line NCH Provider State Code is DC, IL, MD, WA or VA.

We are unable to comply with your request because the agency does not maintain a
record that is responsive to your request and because, under FOIA, we are not required
either to create records or to furnish information in a particular form or format when a
record in such form or format is not readily reproducible employing reasonable efforts.
See 5 U.S.C. § 552(a)(3)(B).  We will not reproduce a record in a form or format that
would be responsive to your request because we cannot readily do so with reasonable
effort.

To explain, the carrier SAF is not the repository of the calendar year 2004 records you
have requested.  Medicare claims records that cover calendar year 2004 are
maintained electronically by CMS in the National Claims History (NCH) files.  The
NCH is a "flat file database" in which the files are generally read one record per line
in sequential order.  The NCH contains approximately 829.4 million claims for
calendar year 2004.  In order to process your request, each of the 829.4 million claims
that is identified with the provider state codes of interest to you would need to be
reformatted to include only the data elements that you have requested.  The computer
analysis and generation time associated with this "reformatting" effort is
approximately two weeks or longer if a single file is produced.  Hence, it is not
possible to satisfy your request with reasonable effort.

Page 2: Mr. Krughoff/C06FOI1318 (KJ)

I wish to point out that on June 1, 2006, CMS announced an effort to make health care more affordable and accessible, by making cost and quality data available. CMS posted the costs it pays hospitals for 30 common elective procedures and other hospital admissions at:

http://www.cms.hhs.gov/HealthCareConInit/

The information is categorized by state and county and includes a range of prices, the national average payment for the procedure, and the number of cases the hospital has handled.

CMS is working closely with a number of national and local organizations to develop more comprehensive and personalized information for common elective procedures of ambulatory services centers later this summer and common hospital outpatient and physician services this fall.

Additional information on transparency in health care costs and quality is located at:

http://www.hhs.gov/news/press/2006pres/20060601a.html

and,

http://www.cms.hhs.gov/apps/media/press/release.asp?Counter=1872

You may appeal this decision instead of requesting an informal review. To file an appeal, you must appeal in writing within 45 days of the date of this letter. Both your appeal letter and the envelope in which it is sent should be labeled "Freedom of Information Act Appeal." Enclosing a copy of this letter or referring to the "Refer to" number at the top of the first page of this letter will help to expedite matters. To file an appeal, mail your appeal to:

> Deputy Administrator
> Centers for Medicare & Medicaid Services
> 7500 Security Boulevard, Room C5-16-03
> Baltimore, Maryland 21244-1850

Sincerely,

Michael S. Marquis
Director
Freedom of Information Group

# Exhibit C

WILMERHALE

July 25, 2006

Stephen M. Albrecht

+1 202 663 6714 (t)
+1 202 663 6363 (f)
stephen.albrecht@wilmerhale.com

**By United Parcel Service and Facsimile**

Deputy Administrator
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Room C5-16-03
Baltimore, MD 21244-1850

Re: *Freedom of Information Act Appeal - C06FOI1318*

Dear Sir or Madam:

On March 27, 2006, Consumers' CHECKBOOK/Center for the Study of Services ("CSS") filed a request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, with the Centers for Medicare & Medicaid Services ("CMS") requesting certain Medicare physician claim records ("the request"). CMS responded to the request in a letter dated June 26, 2006 from Mr. Michael S. Marquis, Director of the Centers for Medicare and Medicaid Services ("CMS") Freedom of Information Group ("the denial").[1] *See* Exhibits A-B.

In its response, CMS denied the request in its entirety and refused to produce even a single responsive record. Pursuant to 5 U.S.C. § 552 and 45 C.F.R. § 5.34, CSS hereby appeals the denial of the request.

**I. Summary of Argument**

On March 27, 2006, CSS[2] requested specific data items contained within a single database maintained electronically by CMS, and requested that the data be produced

---

[1] The denial stated that in order to file an appeal, CSS must appeal "in writing within 45 days of the date of this letter." *See* Ex. B. However, the Department of Health and Human Services ("HHS") FOIA regulations state that appeals must be filed "within *30* days from the date you *receive* [the response] letter…." 45 C.F.R. § 5.34(a) (emphasis added). Due to these conflicting deadlines, CSS has taken a conservative approach and filed this appeal within 30 days from the date of the denial letter. CSS does, however, reserve the right to supplement this appeal to the extent permitted under law or allowed under the guidance offered by CMS in the denial letter.

[2] CSS is a non-profit 501(c)(3) corporation, founded in 1974 for the purpose of conducting and encouraging studies and educating the public on the kinds and quality of consumer services available to the public, including those services provided through government programs. CSS publishes *Consumers' CHECKBOOK* magazine in seven metropolitan areas. The magazine rates

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Baltimore    Beijing    Berlin    Boston    Brussels    London    Munich    New York    Northern Virginia    Oxford    Palo Alto    Waltham    Washington

WILMERHALE

CMS Deputy Administrator
July 25, 2006
Page 2

electronically "as it is maintained at CMS." *See* Ex. A. CMS denied the request on two grounds, neither of which constitutes a legitimate justification for denial.

- First, CMS claimed that "the agency does not maintain a record that is responsive to [the] request," and thus responding to the request would require it to "create records." *See* Ex. B. However, in the very same letter, CMS acknowledged that the requested data does exist as a part of a single electronic database maintained by CMS. Under the FOIA statute, relevant case law, and the CMS FOIA policies and procedures, a database is considered a "record," and extracting a subset of data from a larger database is <u>not</u> considered creating a new record.

- Second, CMS asserted that under 5 U.S.C. § 552(a)(3)(B), compliance with the request was not required because producing the requested records would entail producing data "in a particular form or format" that is not "readily reproducible employing reasonable efforts." *See* Ex. B. Under the FOIA statute, relevant case law and the CMS FOIA policies and procedures, the statutory provision cited by CMS is not a proper legal justification for the complete denial of a FOIA request.

The purpose of the FOIA is to "ensure that the Government's activities be opened to the sharp eye of the public scrutiny...." *United States Dept. of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989) (emphasis omitted). CSS has requested records maintained by CMS in order to assess the physician services that CMS is purchasing with taxpayer dollars through the Medicare program and to scrutinize and evaluate CMS's performance of its administrative duties. Unfortunately, CMS has denied this request so as to conceal its data, and conceal the internal workings of the Medicare program, from public scrutiny. CMS's denial violates the letter and the spirit of the FOIA and CMS's own policies, and must be overturned.

## II.     Medicare Data Background

CMS maintains the National Claims History ("NCH"), an electronic database containing data from millions of claims filed by various types of providers each year under the Medicare program. CMS routinely prepares subsets of the NCH for distribution to private parties for

---

many types of local service firms from auto repair shops to plumbers, from doctors to banks. CSS also publishes nationally distributed books including the <u>Guide to Top Doctors</u>, <u>Consumers' Guide to Hospitals</u>, and the <u>Guide to Health Plans for Federal Employees</u>, which is now in its 27th annual edition and is sold online to many federal agencies to assist their employees and retirees in making health plan decisions.

WILMERHALE

CMS Deputy Administrator
July 25, 2006
Page 3

research purposes.[3]  A Standard Analytical File (SAF) is a typical "subset" of the NCH created
by CMS to capture the claims submitted to Medicare for each specific type of provider.[4]  For
example, the CMS web page explains that CMS creates a Home Health Agency SAF, which
contains the subset of claims submitted by home health agencies to the Medicare program.
Similarly, claims submitted by physicians under Medicare Part B are segregated into an SAF
called the "Physician/Supplier Part B - Carrier File," also know as the Carrier SAF. *See* Ex. D.

      In the request, CSS described the requested data as "records compiled and maintained
electronically by CMS in the Carrier SAF files ...." *See* Ex. A.  In an effort to simplify its
request, CSS described the requested records by referencing the data in the specific SAF rather
than the broader NCH.  CMS, however, asserted "the carrier SAF is not the repository of the
calendar year 2004 records you have requested.  Medicare claims records that cover calendar
year 2004 are maintained electronically by CMS in the National Claims History (NCH) files."
*See* Ex. B.  Based on CMS's own explanations of its data, there should be no practical difference
in data content between the physician claims in the NCH and the claims in the Carrier SAF,
which are extracted from the NCH.[5]  In fact, CSS contacted the Research Data Assistance
Center ("ResDAC"), which contracts with CMS to assist researchers in their requests for data
from CMS, and verified that the requested data does exist in the CMS files as described in the
request.  If as a technical matter, CMS prefers to obtain the requested records from the NCH
rather than a corresponding SAF file, CSS does not object.

---

[3]     A further explanation of the CMS data request process for research purposes is available
on the CMS web page at http://www.cms.hhs.gov/PrivProtectedData/.  *See* Exhibit C.  CMS
requires that researchers receiving this data sign a Data Use Agreement ("DUA"), which among
other things, prohibits the public dissemination of physician specific data.  Because CSS
routinely publishes the findings of its consumer services analysis, this limitation makes the
research request process unsuitable for CSS's purposes.

[4]     A further explanation of the SAFs is available on the CMS web page at
http://www.cms.hhs.gov/IdentifiableDataFiles/02_StandardAnalyticalFiles.asp#TopOfPage, and
is attached hereto as Exhibit D.

[5]     In fact, in a letter from Dennis G. Smith, Director, CMS Center for Medicaid and State
Operations, to various State Medicaid Directors dated June 4, 2002, Mr. Smith provided
instructions for state agencies to request Medicare claim data, explaining that the data resided in
"Medicare's National Claims History (NCH) Standard Analytical Files (SAF)" for each state.
This letter is available at http://www.cms.hhs.gov/smdl/downloads/smd060402.pdf, and is
attached to hereto as Exhibit E.

WILMERHALE

CMS Deputy Administrator
July 25, 2006
Page 4

### III.    Argument

#### A.  Complying with the CSS request does not require the creation of "new records."

CMS asserted that it does not maintain a record that is responsive to the CSS request, and therefore complying with the request would require the creation of records. Under the FOIA statute, however, the contents of an electronic database are considered "records," and an agency is obligated to search agency records "manually or by automated means" in order to locate records that are responsive to a request. 5 U.S.C. §§ 552(a)(3)(C) & (D); see *also Yeager v. Drug Enforcement Admin. et al.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("computer-stored records, whether stored in the central processing unit, on magnetic tape or in some other form, are still 'records' for purposes of the FOIA").

It is immaterial that the NCH database houses a set of data broader than CSS has requested. CMS admitted in the denial that the data CSS requested is maintained in the NCH, and that the requested items of data can be extracted from the full NCH for production. This extraction of data from a database is not the creation of new records, and any assertion to the contrary is inconsistent with the FOIA statute and relevant case law. *See, e.g., Schladetsch v. U.S. Dept. of Housing and Urban Development*, No. 99-0175, 2000 WL 33372125 at *3 (D.D.C. Apr. 4, 2000) ("Because HUD has conceded that it possesses in its databases the discrete pieces of information which [plaintiff] seeks, extracting and compiling that data does not amount to the creation of a new record").

CMS's Freedom of Information Group Policy and Procedural Guide further addresses the issue of when preparing requested data for disclosure will be deemed creating "new records." The Guide states:

> The FOIA does not require that new records or documents be created to respond to requests. Writing a new program(s) to extract data from multiple computer files in order to compile such data into a "new" record is considered creating a record. However, deleting non-releasable data, or data not within the scope of the request, from an existing record is not considered creating a record. This applies even if, for administrative convenience, we write a new program to edit the existing record rather than editing the record manually after the hard copy has been run.[6] *See* Ex. F at 10.

---

[6]    CMS Office of Strategic Operations and Regulatory Affairs, Freedom of Information Group, Policy and Procedural Guide (updated June 2006). The Guide is available at http://www.cms.hhs.gov/FOIA/downloads/CMS FOIA POLICY and Procedural Guide.pdf.

WILMERHALE

CMS Deputy Administrator
July 25, 2006
Page 5

CSS has not requested that CMS extract data from multiple sources to be aggregated into a "new record." CMS has acknowledged that the data CSS requested exists in a single electronic location – the NCH – not in multiple and disparate computer databases. CSS has requested a subset of the data in the NCH. In order to comply with the CSS request, CMS may delete the data that is outside the scope of the request from the full NCH. Under CMS's own policy, this procedure does not constitute creating a new record. Even if, for administrative efficiency, CMS decides to write a program to perform this editing function, it would not be creating a new record. CMS's assertion to the contrary in the denial letter is inconsistent with this policy, and inconsistent with applicable federal law.

**B.  The FOIA provision cited by CMS does not justify a denial of the CSS request in its entirety.**

When CMS asserted that it was not required to expend an unreasonable effort to comply with the CSS request, it mis-characterized the FOIA statute regarding the reasonableness of production in a specific form or format. In the denial letter, CMS cited to 5 U.S.C. § 552(a)(3)(B). This statutory provision must be read in conjunction with the preceding provision to understand its meaning. Section 522(a)(3)(A) states that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." With the prior understanding that a proper request has been made for existing records, section 522(a)(3)(B) goes on to explain:

> In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

With this context, it is clear that § 552(a)(3)(B) does not provide an agency with a justification for completely denying a FOIA request. Rather, it clarifies that once an agency has identified responsive records that will be produced, the agency must take reasonable steps to provide records in the form or format that a requestor prefers. *See, e.g., TPS, Inc. v. U.S. Dep't of Defense*, 330 F.3d 1191, 1195 (9th Cir. 2003) (agency conceded that electronic records were to be produced to a requestor, but argued under § 552(a)(3)(B) that the agency was not obligated to compress or "zip" the data files. The court held that if the agency used the "zip" technology in its "normal business as usual approach," then it would be reasonable to employ that technology for its FOIA response). Under § 552(a)(3)(B), if it would be unreasonable for an agency to transform a record into the requestor's preferred form or format, then the agency would still be required to provide the requested record in whatever form or format the record is maintained by the agency in normal course. *See also, Schladetsch*, 2000 WL 33372125 at *3, n.2 (explaining

WILMERHALE

CMS Deputy Administrator
July 25, 2006
Page 6

that "form or format" typically involves choices between microfiche or computer form or
visicorder charts or paper form. Because plaintiff requested records as they were maintained by
the agency, section (a)(3)(B) did not apply.)

CMS addressed § 552(a)(3)(B) in a FOIA Memorandum issued on April 24, 1997
following the implementation of the "EFOIA" Amendments of 1996.[2/] The memorandum states:

> The term "form" or "format" also can be interpreted to mean the organization or
> arrangement of information within a record. It has been our practice in the past to
> reproduce computerized records only *in the form or format in which we normally
> extract the record from our system.* However, in line with this provision, the following
> guidance will assist you when responding to requests for computerized records in a form
> or format other than that normally extracted from an automated database[.]

*See* Exhibit G at 2 (emphasis added). This FOIA policy statement makes clear that as a default
rule, CMS will produce computerized records in the form in which they are normally extracted
from CMS data systems. CSS has asked for nothing more than this simple extraction of data.
CSS stated in the request that the Medicare claim data should be produced "as it is maintained at
CMS." *See* Ex. A. CSS did request some further format specifications, including that the data
be "in EBCDIC format, compressed, and *preferably* divided into individual files for each state
requested." *See* Ex. A (emphasis added). If CMS believes that these formatting requests are
"unreasonable" under 5 U.S.C. § 552(a)(3)(B), then CSS would expect an explanation to that
effect. However, § 552(a)(3)(B) does not authorize CMS to deny the CSS request in its entirety
on "form and format" grounds. CMS would be expected, at the very least, to provide the data in
the form or format in which it is normally extracted from the NCH system. CMS's misguided
attempt to deny the request in its entirety on formatting grounds under 5 U.S.C. § 552(a)(3)(B)
must be reversed.

### C. The CSS request does not require an "unreasonable effort" from CMS.

The FOIA statute explains that "[a]ny reasonably segregable portion of a record shall be
provided to any person requesting such record after deletion of those portions which are exempt
under this subsection." 5 U.S.C. § 552(b). Courts interpret the "reasonably segregable" term
very liberally, and have required that agencies expend significant resources to comply with FOIA

---

[2/]     Memorandum from Glenn W. Kendall, Acting Director, Freedom of Information and
Privacy Office to Central and Regional Office Freedom of Information Act Coordinators (Apr.
24, 1997), available at http://www.cms.hhs.gov/FOIA/downloads/CMS%20FOIA%20Policy-E-
FOIA-Form%20n%20Format.pdf.

WILMERHALE

CMS Deputy Administrator
July 25, 2006
Page 7

requests. For example, in *Long v. U.S. Internal Revenue Serv.*, the Ninth Circuit held that reviewing and editing over 200,000 pages of documentation and a series of data tapes at a cost of up to $160,000 was "not considered an unreasonable burden to place on an agency." 596 F.2d 362, 366-367 (9th Cir. 1979).[8] The court explained that Congress has not limited the scope of the FOIA, despite the expenses that can be involved. "Congress has determined that access to government records is an important objective. We therefore cannot conclude that the costs of editing involved in this case are so extreme that segregation of revealable material is unreasonable as a matter of law." *Id.*

CMS estimated that it would take approximately 2 weeks to process the CSS request. In light of the Congressional mandate for the release of public records under the FOIA and the precedent courts have set requiring significant efforts to comply with FOIA requests, compliance with the CSS request cannot be deemed "unreasonable." Moreover, CMS cannot argue that complying with the CSS request would disrupt its normal work processes. As described above, CMS prepares data extracts comparable in size, scope and field selection to the CSS request on a routine basis for third-party researchers who request these data extracts. Furthermore, CMS employs contractors such as the Research Data Distribution Center, to process these research requests. Thus, CMS staff would not be required to perform the data processing required in this case if it elected to utilize its normal contractors. To the extent that CMS can rely on contractors to prepare the data for the request, and because costs of production can be passed on to the requestor under some circumstances, it is difficult to understand how CMS would be burdened in any way by the CSS request.

The FOIA, and the EFOIA amendments of 1996 in particular, are a Congressional mandate for federal agencies to open their records for public scrutiny. In the EFOIA amendments, Congress particularly found that "[g]overnment agencies increasingly use computers to conduct agency business and to store publicly valuable agency records and information," and "[g]overnment agencies should use new technology to enhance public access to agency records and information." *TPS, Inc.*, 330 F.3d at 1195 (citing Pub. L. No. 104-231 at

---

[8]     The *Long* court also catalogued a series of decisions whereby courts ordered agencies to commit significant resources to processing FOIA requests. For example, in a case involving a request for information regarding the Rosenberg trials, the U.S. District Court for the District of Columbia ordered the Department of Justice ("DOJ") to fulfill the request, requiring DOJ to commit 65 full-time and 21 part-time employees to processing a single FOIA request. 596 F.2d at 367 (citing *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 613 (D.C. Cir. 1976). *See also, Sherman v. U.S. Dep't of the Army*, 244 F.3d 357, 360 (5th Cir. 2001) (Army prepared to manually redact hundreds of thousands of records, and then rescan them into a computer database to comply with a FOIA request).

WILMERHALE

CMS Deputy Administrator
July 25, 2006
Page 8

*2).  Under this mandate, CMS cannot be allowed to use the technical aspects of data formatting and database extractions as a basis for denying access to its records.  Rather, the CMS data systems should be employed to enhance public access to agency records.  The FOIA statute, case law, and CMS's own policies require compliance with the request.

### IV.    Conclusion

For the foregoing reasons, the denial of the CSS FOIA request must be reversed, and the requested records produced.  We look forward to your reply to this appeal within **twenty (20) working days**, as required under 5 U.S.C. § 552(a)(6)(A)(ii).

In the original request, CSS requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 45 C.F.R. § 5.45.  Because CMS denied the request, the fee waiver has not been addressed in this matter.  CSS retains the right to request a fee waiver in the event that the denial is overturned on appeal and the requested records are produced.

Sincerely,

Robert Krughoff
President, CHECKBOOK/CSS
1625 K St., NW, 8th Floor
Washington, DC 20006
Tel: (800) 213-7283
Fax: (202) 347-4000
E-mail: Rkrughoff@checkbook.org

Stephen M. Albrecht
WilmerHale
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6714
Fax: (202) 663-6363
E-mail: Stephen.Albrecht@wilmerhale.com

Enclosures

# Exhibit D

**DEPARTMENT OF HEALTH & HUMAN SERVICES**
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop N2-20-16
Baltimore, Maryland 21244-1850



Office of Strategic Operations and Regulatory Affairs / Freedom of Information Group

August 1, 2006

**REFER TO:   FOIA Appeal C06FOI2229A (DJP)**

Mr. Stephen M. Albrecht, Esquire
Wilmer, Cutler, Pickering, Hale and Dorr, LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006

Dear Mr. Albrecht:

I am acknowledging receipt of your July 25, 2006 Freedom of Information Act
(FOIA) appeal, which you sent to the Deputy Administrator, Centers for Medicare &
Medicaid Services (CMS).  We will process your appeal as expeditiously as possible,
consistent with Department of Health and Human Services FOIA rules set forth at
45 CFR Part 5.

Questions regarding your appeal should be directed to Ms. Deborah Peters at
(410) 786-3677.

Sincerely,

Michael S. Marquis
Director
Freedom of Information Group

012H62204690
$00.630
08/01/2006
Mailed From 21244
US POSTAGE

Hasler

DEPARTMENT OF
HEALTH AND HUMAN SERVICES
HEALTH CARE FINANCING ADMINISTRATION
7500 SECURITY BLVD
BALTIMORE MD 21244-1850

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE

Mr. Stephen M. Albrecht, Esquire
Wilmer, Cutler, Pickering, Hale and Dorr, LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 2006

42

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CONSUMERS' CHECKBOOK, CENTER FOR THE STUDY OF SERVICES | U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR MEDICARE AND MEDICAID SERVICES |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Patrick Carome
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006    (202) 663-6000

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 3 Federal Question (U.S. Government Not a Party)
- ● 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**A. Antitrust**
- 410 Antitrust

**B. Personal Injury/Malpractice**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Medical Malpractice
- 365 Product Liability
- 368 Asbestos Product Liability

**C. Administrative Agency Review**
- 151 Medicare Act

Social Security:
- 861 HIA ((1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g)
- 864 SSID Title XVI
- 865 RSI (405(g)

Other Statutes:
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- 890 Other Statutory Actions (If Administrative Agency is Involved)

**D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

**E. General Civil (Other)    OR    F. Pro Se General Civil**

Real Property
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent, Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

Personal Property
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

Bankruptcy
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

Prisoner Petitions
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

Property Rights
- 820 Copyrights
- 830 Patent
- 840 Trademark

Federal Tax Suits
- 870 Taxes (US plaintiff or defendant
- 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- 610 Agriculture
- 620 Other Food &Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 RR & Truck
- 650 Airline Regs
- 660 Occupational Safety/Health
- 690 Other

Other Statutes
- 400 State Reapportionment
- 430 Banks & Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation

- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Satellite TV
- 810 Selective Service
- 850 Securities/Commodities/ Exchange
- 875 Customer Challenge 12 USC 3410
- 900 Appeal of fee determination under equal access to Justice
- 950 Constitutionality of State Statutes
- 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/* *2255* | ○ **H.** *Employment* *Discrimination* | ◉ **I.** *FOIA/PRIVACY* *ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA* *(non-employment)* | ○ **L.** *Other Civil Rights* *(non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights<br>Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-<br>Employment<br>☐ **446** Americans w/Disabilities-<br>Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of<br>Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. 552  For injunctive relief to compel production of records.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  12/22/06   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.