**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CONSUMERS' CHECKBOOK, CENTER FOR THE STUDY OF SERVICES, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATED DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) ) |
| Defendant. | ) ) |

Case No. 06-2201 (EGS)

## REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Department of Health and Human Services ("HHS") hereby submits this reply in support of its motion for summary judgment. On December 26, 2006, Plaintiff filed the instant action claiming that the Defendant violated the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), by denying its request for records. Complaint Caption. While the suit was pending and on January 29, 2007, Defendant provided a letter to Plaintiff, explaining a revision of the previous denial of the request for records and that Defendant had determined that it could extract the requested data. The letter also explained that Defendant denied Plaintiff's fee waiver request and informed Plaintiff that completion of the FOIA request would require a payment of $3,944.70. MSJ, Marquis Dec. ¶¶ 12, 14.

During the course of the lawsuit, Plaintiff appealed the denial of its fee waiver request. MSJ, Marquis Dec. ¶14. Plaintiff, in a letter dated March 8, 2007, agreed to reduce the scope of the requested documents to reduce costs and to pay the associated fees in the event that the fee waiver is ultimately denied. See Plt Opp., Krug. Dec. ¶ 9. On March 16, 2007, the Defendant

issued a timely decision upholding its denial of the fee waiver.  See Exhibit A.  The Defendant indicated that it will release the requested data in full (based on the Plaintiff's reduced scope request) and it estimates that the computer time needed to extract the data is about 3-4 weeks.  Exhibit A

## ARGUMENT

**I.      Defendant did not exhaust its fee waiver request prior to filing this law suit.**

Where a FOIA plaintiff attempts to obtain judicial review without having first fully exhausted his administrative remedies, his lawsuit is subject to dismissal for lack of subject matter jurisdiction.  Oglesby v. United States Dept. of the Army, 920 F.2d 57 (D.C. Cir. 1990).  An agency may require payment of fees even if the FOIA request has become the subject of litigation.  See, e.g., Trueblood v. Dept. of Treasury, 943 F. Supp. 64, 68 (D.D.C. 1996) (failure to pay fees is a jurisdictional defense that can be raised at any time); see also Pollack v. Dept. of Justice, 49 F.3d 115, 119-20 (4th Cir. 1995).  Administrative exhaustion does not occur in the FOIA context until the required fees are paid in full or an appeal is taken from the refusal to waive fees.  See Crooker v. United States Secret Service, 577 F. Supp. 1218, 1219 (D.D.C 1983) (requester must pay fees or administratively appeal the requirement of fees before seeking judicial review of a FOIA request).  On February 28, 2007, after filing the instant law suit, Plaintiff appealed the denial of its request for a fee waiver.  Because Plaintiff neither paid the fee nor finished the appeal process for the denial of the fee waiver request before the instant action was filed, the Court should grant summary judgment for the Defendant.

**II.     Defendant will release documents in full**

Moreover, the Defendant has indicated that it will release in full the requested documents based on Plaintiff's statement that it will pay the fees in the event that the fee wavier is ultimately denied and based on Plaintiff's reduced scope request. Exhibit A.     Pursuant to Defendant's FOIA regulations, the Defendant started searching for records after the Plaintiff agreed that it would pay the fees in the event that the fee waiver is ultimately denied. See 45 C.F.R. Sec. 5.44. The Defendant estimates that the computer time needed to extract the data is about 3-4 weeks. Exhibit A. The Court should dismiss this action because Defendant intends to release in full the requested documents. See Exhibit A. Finally, the Court should deny Plaintiff's request for a scheduling conference to establish deadlines as the Defendant has indicated how long it estimates it will take to obtain the requested information from its computers.

**III.    Defendant properly denied fee waiver request**

"The decision of an agency to grant or deny a fee waiver request is reviewed de novo, looking only to the administrative record before the agency at the time of the decision." D.C. Technical Assistance Organization v. U.S. Dept. of Housing and Urban Development, 85 F. Supp.2d 46, 48 (D.D.C. 2000); see also, Campbell v. United States Department of Justice, 164 F.3d 20, 35 (D.C. Cir. 1998); Rozet v. Department of Housing and Urban Development, 59 F. Supp.2d 55, 56 (D.D.C. 1999).

The FOIA provides that "[d]ocuments shall be furnished without charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the

commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Plaintiff bears the burden of demonstrating that it is entitled to a fee waiver. Casad v. HHS, No. 01-1911, 2003 U.S. Dist. LEXIS 13007, at *20 (D.D.C. June 20, 2003) (emphasizing that requester bears the burden of justifying entitlement to waiver of all or part of assessed fees).

Pursuant to the FOIA's fee waiver provisions, the Defendant has promulgated guidelines for determining when fees should be waived. See 45 C.F.R. § 5.45(a). The FOIA provides that "each agency shall promulgate regulations . . . specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(I). The statute and the regulations compiled by the agency must both be taken into consideration when a fee waiver denial is being adjudicated. See, D.C. Technical Assistance, 85 F. Supp.2d 46, 48; Campbell, 164 F.3d at 35; Samuel Gruber Education Project v. U.S. Department of Justice, 24 F. Supp.2d 1, 10 (D.D.C. 1998).

In Plaintiff's March 27, 2006 request, the Plaintiff described its organization, Checkbook/ Center for the Study of Services (Checkbook / CSS), as a non-profit entity which conducts studies of consumer services, including government services, and publishes material which informs or educates consumers concerning those services. Plaintiff contends a fee waiver is appropriate because providing the requested information will enable Checkbook / CSS to analyze the data and subsequently publish that analysis, which it believes is in the public interest, and will contribute significantly to public scrutiny of the operations of CMS and the Medicare program. Plaintiff further stated that the commercial interests of its organization is not the primary basis for its request. MSJ, Marquis Dec. ¶ 12.

Plaintiff, however, failed to demonstrate that the disclosure would advance the understanding of the general public or that it did not have a primary commercial interest in the disclosure. Because Plaintiff failed to meet the standard for a fee waiver, the Court should uphold Defendant's denial and dismiss the case.

*a.    Disclosure will not advance the understanding of the general public*

Here, the Defendant found that the Plaintiff markets and sells its services. Exhibit A; see also www.checkboook.org; www.cssresearch.org. Pursuant to 45 C.F.R. § 5.45(a), in determining the public interest in the disclosure, the Defendant shall consider, among other things, "will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons?" 45 C.F.R. § 5.45(a)(2); Carney v. United States Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1995) ("observing that the relevant inquiry is "whether requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject"). Defendant properly found that the Plaintiff did not demonstrate that disclosure of the requested data will advance the understanding of the general public because disseminating on a subscription or fee basis will limit the general public's access to the requested data. MSJ, Marquis Dec. ¶ 12; Exhibit A.

Moreover, pursuant to 45 C.F.R. § 5.45(a)(2), the Defendant should consider whether "the public's understanding of the government's operations be substantially greater as a result of the disclosure." 45 C.F.R. § 5.45(a)(2). Defendant found that the Plaintiff did not demonstrate how "releasing a press release of a few pages in length will be a significant contribution to public understanding, in light of the fact that [the Plaintiff is] requesting 29 data elements for the Medicare physicians for the 2004 calendar year." Exhibit A, p. 3. Plaintiff does not appear to

4

propose an overall quality analysis and "the information, in and of itself, [does not] shed light upon whether the Medicare program is adequately assessing qualify of care issues." Exhibit A, p. 3.

    b.    *Plaintiff has a primary commercial interest in the disclosure*

Pursuant to 45 C.F.R. § 5.45(a), in determining whether the waiver request is not primarily in the commercial interest of the requester, the Defendant will consider "if disclosure would further a commercial interest of the requester, would that effect outweigh the advancement of the public interest. . . ?" 45 C.F.R. § 5.45(a)(3). Plaintiff, even though a non profit entity[1], has a commercial interest in the requested materials. See www.checkboook.org; www.cssresearch.org. VoteHemp, Inc. v. DEA, 237 F. Supp. 2d 55, 65 (D.D.C. 2002) ("A review of plaintiff's website pages demonstrates that indeed it has commercial interest in the information that it is seeking to obtain"). Defendant correctly concluded that CheckBook /CSS has a primary commercial interest in the requested disclosure and that Checkbook / CSS's commercial interest in the disclosure outweighs the public interest in this matter. MSJ, Marquis Dec. ¶ 12, Exhibit A. Therefore, the Court should uphold Defendant's fee requirement and dismiss the action.

---

[1] Critical Mass Energy Project v. NRC, 830 F.2d 278, 281 (D.C. Cir. 1987) (recognizing that entity's "non-profit status is not determinative" of commercial status")

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that the Court grant summary judgment in favor of Defendant.

Dated: March 17, 2007            Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
ANDREA McBARNETTE, D.C. Bar # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530



DEPARTMENT OF HEALTH & HUMAN SERVICES                    Centers for Medicare & Medicaid Services

RE: Appeal Case Number C07FOI0907A      MAR 16 2007      *Deputy Administrator*
Baltimore, MD 21244-1850

Mr. Robert Krughoff
President, CHECKBOOK/CSS
1625 K Street, 8th Floor
Washington, D.C. 20006

Dear Mr. Krughoff:

This is in response to your February 28, 2007 letter appealing the decision of Michael S. Marquis, Director, Freedom of Information Group (FIG), Centers for Medicare & Medicaid Services (CMS), to deny your request for a waiver of fees for processing your March 27, 2006 Freedom of Information Act (FOIA) request. Your request sought a subset of 29 specific data elements from a CMS database containing physician Medicare claims records, for the 2004 calendar year, for the localities of Washington, D.C., Illinois, Maryland, Washington, or Virginia. Before rendering my appeal decision, I note that I have been advised that contingent upon the court's final decision on the fee waiver issue in the litigation that is pending over this FOIA request, you are willing to pay the FOIA processing fees for CMS to produce the requested 29 fields of data listed on Attachment A of your request only for those records for which the Line NCH Provider State Code is Washington, D.C. Based upon your agreement to pay, we have initiated production of the requested data. It will be released to you in full, and without redaction. The estimated computer time to generate the data will be approximately three to four weeks. My appeal ruling follows.

**Background:** Your original FOIA request sought a subset of 29 specific data elements from a CMS database containing physician Medicare claims records, for the 2004 calendar year, for the localities of Washington, D.C., Illinois, Maryland, Washington, or Virginia. The request also sought a fee waiver. Specifically, your fee waiver request provided that CHECKBOOK/CSS is a non-profit organization that conducts and supports studies of consumer services and publishes reports that educate consumers about such services. Your request also stated that you believed your analysis of the requested data and publication of the findings would contribute significantly to the public's scrutiny of the operation and performance of CMS and the Medicare program. Your request asserted that the commercial interests of CHECKBOOK/CSS are not primary to the FOIA request.

Mr. Marquis' January 29, 2007 letter explained the reasons for the denial. The denial noted that the fee waiver request lacked specificity regarding publication of the requested data and disseminating the data in such a way to provide benefit to a broad public audience. In addition, the denial reviewed the services provided by CHECKBOOK/CSS, as described on the web sites www.checkbook.org and www.cssresearch.org, and noted that CHECKBOOK/CSS charges fees for survey and research services, to individual consumers, governments, and commercial entities. The denial pointed out that Checkbook Magazine, a publication which evaluates various services used by consumers, sells its service rating information by subscription in the metropolitan areas where it is published, at subscription rates ranging from $30.00 to $34.00. The denial also showed that CHECKBOOK/CSS also sells access to health publications such as the Guide to Health Plans for Federal Employees and the Guide to Top Doctors. Additionally, the denial explained that CHECKBOOK/CSS actively markets itself as an expert in conducting studies, surveys, data collection and analysis, as evidenced by

**PAGE II. – CHECKBOOK/CSS / FOIA APPEAL C07FOI0907A**

its web site at http://www.cssresearch.org/exp.cfm. In support of his decision concerning the commercial interests of your organization, Mr. Marquis provided an example of CHECKBOOK/CSS' description of itself as an approved vendor to administer Hospital Consumer Assessment of Health Plans (HCAHPS) hospital surveys, for which it charges an annual fee of $2,900. Based on the foregoing, Mr. Marquis found that the commercial interests of CHECKBOOK/CSS were primary to the FOIA request.

You appealed the fee waiver denial on February 28, 2007, arguing that your organization met the Department's public interest criteria for a fee waiver and that the public interest in obtaining the requested records outweighs any commercial interest of your organization.

**Analysis of Public Interest**: It is the policy of this Department to waive or reduce fees if disclosure of the information meets both the following tests: (1) it is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) it is not primarily in the commercial interest of the requester.

> In analyzing the public interest, we consider the following factors:
>
> (1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?
>
> (2) Would disclosure of the records reveal meaningful information about government operations or activities? Can one learn from these records anything about such operations that is not already public knowledge?
>
> (3) Will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons?
>
> (4) Will the contribution to public understanding be a significant one? Will the public's understanding of the government's operations be substantially greater as a result of the disclosure?

With respect to the first two above public interest factors, we do not dispute that the requested records pertains to operations or activities of the Federal Government and that the disclosure of the records would reveal meaningful information about government operations or activities.

With regard to the third public interest factor, we question whether the disclosure will advance the understanding of the general public as distinguished from a narrow segment of interested persons. Your appeal included an attachment of a press release as an example of how your organization releases the results of its quality studies through press releases. This sample press release, in the first two and a half pages, generally explains your organization's 360-page Consumers' Guide to Hospitals (the Guide) and then explains that if consumers want the Guide, they can pay $19.95 or subscribe for two years of online access to the same information in the Guide for $19.95. This press release shows that if the public wants access to the full Guide, they have to pay for it, a circumstance which may well limit access to the information.

## PAGE III. – CHECKBOOK/CSS / FOIA APPEAL C07FOI0907A

Your appeal does not specify how the general public's understanding will be advanced in light of the fact that your organization charges for some of the information that it obtains, and it is not clear to us how much your organization intends to charge for the requested records. Your appeal states that your organization often makes free content available on its website. Your appeal, however, does not adequately explain how CHECKBOOK/CSS intends to convey the requested data to the general public. Your amended FOIA request is for 29 data elements about all Medicare physicians in the District of Columbia for the 2004 calendar year. This is a large amount of information, and it is not clear from your appeal how news articles, press releases, or media reports will convey this vast amount of information to the general public.

With respect to the fourth public interest factor, using the sample press release as an example (Exhibit B of your appeal), you haven't shown how releasing a press release of a few pages in length will be a significant contribution to public understanding, in light of the fact that you are requesting 29 data elements for Medicare physicians for the 2004 calendar year. As we noted in our review of the first and second public interest factors, the data you have requested would allow the public to see the volume and types of procedures performed by individual physicians within Washington, D.C. during the one-year period of 2004, specifically for claims submitted to Medicare. While we do not dispute that the number of times a specific procedure is performed may contribute to a physician's expertise and skill, this quantitative data within a limited context cannot be equated as an overall quality analysis. Nor does this information, in and of itself, shed light upon whether the Medicare program is adequately assessing quality of care issues.

**Analysis of Commercial Interest**: Even though you did not meet the third and fourth factors of the public interest test, we also considered whether your organization's commercial interest is the primary interest. In determining whether the commercial interest is the primary interest of the requester, HHS considers the following factors:

> (1) Would the disclosure further a commercial interest of the requester, or of someone on whose behalf the requester is acting? "Commercial interests" include interests relating to business, trade, and profit. Not only profit-making corporations have commercial interests—so do nonprofit corporations, individuals, unions, and other associations. The interest of a representative of the news media in using the information for news dissemination purposes will not be considered a commercial interest.

> (2) If disclosure would further a commercial interest of the requester, would that effect outweigh the advancement of the public interest defined in paragraph (b) of this section [45 C.F.R. § 5.45]? Which effect is primary?

**PAGE IV. – CHECKBOOK/CSS / FOIA APPEAL C07FOI0907A**

Within your appeal, you did not challenge the initial denial's assertion that your organization markets itself as an expert in conducting studies, surveys, data collection and analysis. As was also pointed out in the initial denial, your organization has exhibited a pattern of charging consumers and others for certain information that it obtains. As we previously stated, Exhibit B of your appeal confirms that consumers must pay $19.95 to gain access to the Consumers Guide to Hospitals. In regard to a supporting argument raised on the fourth page of your appeal, in which you stated that CHECKBOOK/CSS has contracted with government agencies to provide federal employees with free access to the Consumers Checkbook Guide to Health Plans, your organization charges the subscribing agencies for this access. The Department of Health and Human Services paid $12,000 to your organization during 2006 for this access. To reiterate a prior example of CHECKBOOK/CSS' commercial activities, your organization is an approved vendor to administer the HCAHPS hospital survey and charges an annual fee of $2,900 to each facility for those services. In addition to those examples of fee-for-service activities, we also note that CHECKBOOK/CSS charges $24.95 for its Guide to Top Doctors, as stated on the website at http://www.checkbook.org/doctors/pageone.cfm, and as also stated in a recent subscription renewal letter to a CHECKBOOK subscriber. That subscription renewal letter stated the following: "You will enjoy *free* subscriber-only online access to our nationwide *Top Doctors* Ratings to help you find the best health care providers for yourself, your friends, and your family, both locally and nationwide (thousand of consumers pay $24.95 for online access to those ratings alone)".

In addition, your organization's website at http://www.checkbook.org/about.cfm explains that the organization is supported entirely by subscription payments and donations from individual consumers who subscribe to its magazines, and by fees for your survey and information services and books. Even though your website acknowledges that your organization is supported by subscription payments and donations from individual consumers who subscribe to your organization's magazine and by fees for your services and books, your appeal makes a conclusory statement that your commercial interest is "de minimus," and it does not inform us as to how much your organization intends to charge the public for access to the data elements that you are requesting from CMS so we can weigh the commercial interest against the public interest

**Conclusion:** It is the responsibility of the FOIA requester to demonstrate and substantiate his eligibility for a fee waiver. As a FOIA requester, you have not met this burden, in that you have not satisfactorily established that your organization's commercial interest was not primary, nor have you demonstrated how you would disseminate the requested data to edify and inform a broad segment of the population.

Based upon my careful consideration of your appeal arguments discussed above, I find it both reasonable and warranted that CHECKBOOK/CSS should compensate this agency for the costs of producing the requested data. Therefore, I am upholding the denial of your fee waiver request. Your FOIA request has been placed in the "commercial" fee category; FOIA requesters in this category are charged for search, review, and duplication costs.

**PAGE V. – CHECKBOOK/CSS / FOIA APPEAL C07FOI0907A**

This letter constitutes the final decision of the Department of Health and Human Services in the matter. If you disagree with this decision, the law at 5 U.S.C. § 552(a)(4)(B) provides for judicial review in the District of Columbia District Court, or in a U.S. district court where you reside or have your principal place of business, or where the agency records are situated.

Sincerely yours,

Herb B. Kuhn
Acting Deputy Administrator


cc: Mr. Stephen M. Albrecht, Esq.