UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSUMERS' CHECKBOOK,<br>CENTER FOR THE STUDY OF SERVICES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES,<br><br>　　　　Defendant. | Case No. 06-2201 (EGS) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff seeks the disclosure of information that would enable them to discover the annual Medicare reimbursement amounts for individual providers. In light of the privacy interests at stake, Defendant Department of Health and Human Services ("HHS") properly invoked Exemption 6 to withhold the identifying information of individual Medicare providers. In addition, Defendant properly denied Plaintiff's fee waiver request. Defendant submits this opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment.

In this case, Defendant has identified a privacy interest in individual providers' annual Medicare reimbursement amounts and explained how release of the requested information would lead to the disclosure of the annual Medicare reimbursement amounts for individually identified providers. See Def.'s Supp. Br. at 2-10. HHS discloses the Medicare fee schedule for each medical service. By knowing how much HHS pays for each service and knowing the number of times an individually identifiable provider performed every single service in a given year, one

can easily calculate an individually identifiable provider's total annual Medicare reimbursement amount. Def.'s Supp. Br. at 2-10.

## ARGUMENT

**I.      Exemption 6 applies**

Exemption 6 of the Freedom of Information Act ("FOIA") protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Information identifiable as applying to some particular individual, and disclosure of which would cause some special embarrassment to that individual, is presumptively included within the term "similar files" of Exemption 6. Pacific Molasses Co. v. NLRB, 577 F.2d 1172, 1181 and n.5 (5th Cir. 1978). Thus, information identifying reimbursements to Medicare providers is clearly included within the term "similar files" of Exemption 6 of the FOIA.

*1.      There is a privacy interest for small businesses*

Plaintiff discounts providers' privacy interests by arguing that the information is limited to the business of an individual provider, and that corporations and business associations have no privacy interests under Exemption 6. See Pl.'s Resp. at 27-28. This principle, however, is limited when the business is a closely held corporation or similar business entity, such as a physician's practice. Furthermore, Plaintiff requested the Unique Physician Identification Number ("UPIN") for each Medicare provider at issue. UPINs are assigned to each physician or healthcare practitioner when that person enrolls in Medicare. Def.'s Supp. Br. at 3. "While corporations have no privacy, personal financial information is protected, including information about small businesses when the individual and corporation are identical." Providence Journal

Co. v. FBI, 460 F. Supp. 778, 785 (D.R.I. 1978), rev'd on other grounds, 602 F.2d 1010 (1st Cir. 1979); see also Beard v. Espy, No. 94-16748, 1995 WL 792071, at *1 (9th Cir. Dec. 11, 1995); National Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673, 685-86 (D.C. Cir. 1976); Multi Ag Media LLC v. USDA, No. 05-1908, 2006 WL 2320941, at *2-3 (D.D.C. Aug. 9, 2006) ("[I]nformation withheld by the USDA pertains overwhelmingly to family-owed farms . . . the release of which would reveal personal information about those farms' owners."); Atkinson v. FDIC, No. 79-1113, 1980 WL 355660, at *3 (D.D.C. Feb. 13, 1980) (protecting "personal financial information" of third parties), appeal dismissed voluntarily, No. 80-1409, 1980 WL 355810 (D.C. Cir. June 12, 1980).  In this case, Plaintiff specifically requested information about every single individually identifiable provider in a given area, not just information about a corporation or a business association.  Thus, to the extent the providers are individuals, their privacy interests are at stake.

### 2)  *Clearly unwarranted invasion of personal privacy*

The second step in the Court's analysis of Exemption 6 requires a balancing, in order to determine whether disclosure of the information in question would "constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information."  Lepelletier, 164 F.3d at 46 (interior quotation marks omitted) *citing* United States Dept. of Defense Dept. of Military Affairs v. FLRA, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting* Department of Air Force v. Rose, 425 U.S. 352, 372 (1976).

*A.     Public Interest*

Plaintiff argues that the public interest is served by the disclosure of the individually identifying Medicare provider information and that the "requested medicare records are expected to facilitate useful quality studies regarding the services provided by medicare physicians." Pl's Resp. at 32. With respect to reimbursement amounts, the Centers for Medicare & Medicaid Services ("CMS") makes its Medicare fee schedules available to the public. See http://www.cms.hhs.gov/FeeScheduleGenInfo/. Knowing the identity of the individual provider who received a particular amount from CMS sheds little light on government operations and more light on an individual's income.

With respect to the public interest in knowing how often a Medicare provider performs a particular service, although the Department is very supportive of health care quality initiatives, see http://www.hhs.gov/transparency/, the Centers for Medicare & Medicaid Services, which is responsible for the Medicare program, is not authorized by the Medicare statute to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided. The Medicare statute, 42 U.S.C. § 1395, states:

> **Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided**, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person. (Emphasis added.)

Therefore, knowing how often a Medicare provider performs a particular service sheds little light in terms of the provisions of the Medicare statute. The significant privacy interest of individual providers regarding the amounts of their Medicare reimbursements outweighs the

insignificant public interest.  Thus, Exemption 6 protects individually identifying information, which, in combination with readily available public information, could lead to the disclosure of annual Medicare reimbursement amounts of individual providers.

### 3)     Florida Med. Ass'n v. Department of Health, Education, and Welfare

In   Florida Med. Ass'n v. Department of Health, Education, and Welfare, 479 F. Supp. 1291, 1305 (M.D. Fla. 1979), the District Court for the Middle District of Florida addressed the same issue facing this Court, whether information on the amounts paid to individual providers under Medicare are excluded from mandatory disclosures pursuant to FOIA Exemption 6.  In Florida Med. Ass'n, the court held that disclosure of the annual amounts of reimbursements to individual providers of services under the Medicare Act would constitute a clearly unwarranted invasion of personal privacy, and was therefore included within Exemption 6 of the FOIA.

Plaintiff incorrectly argues that the decision of Florida Med. Ass'n was based on a different standard than used today.  Today, "[t]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would . . . let citizens know 'what their government is up to.'" Lepelletier, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), *quoting* United States Dept.  of Defense v. FLRA, 510 U.S. 487, 497 (1994).  In Florida Med. Ass'n, the Court found that the privacy interest outweighed the benefit to the public of "knowing the amounts of public funds spent in reimbursing Medicare providers." 479 F. Supp at 1304.   Thus, the Court in Florida Med. Ass'n properly considered the public interest in knowing what their government is up to and found that Exemption 6 applied.  Here, the Court should likewise determine that Exemption 6 applies to information that would reveal specific Medicare provider's reimbursement amounts.

Moreover, the Court in Florida Med. Ass'n issued a permanent injunction against the Department, which enjoins it from disclosing any list of annual Medicare reimbursement amounts for any years, which would personally and individually identify those providers of services under the Medicare program who are physicians licensed in Florida or who are members of the American Medical Association. See 479 F. Supp at 1311. This injunction is applicable to those physicians in the District of Columbia who are members of the American Medical Association.

## II.    Defendant Properly Denied Plaintiff's Fee Waiver Request

Plaintiff does not deny its use of subscriptions or fees to distribute information, and the Plaintiff did not refute that its intent was to charge a member of the public to look up his or her individual doctor to find out how many medical procedures were performed by the doctor in 2004 (at least those paid for by Medicare).[1] See Plt Response p. 42. Given Plaintiff's history of charging a fee or subscription, it was not unreasonable for the Defendant to conclude that Checkbook's commercial interest would outweigh the public interest, given that the data would likely be marketed to every Medicare beneficiary and his or her family members or caretakers, in the areas covered by Plaintiff's FOIA request, who wanted to look up the number of procedures performed by their doctors.

Defendant also correctly determined that a press release, a media appearance, or even summary report concerning the requested data does not significantly convey the vast amount of information concerning every procedure that was performed by every single Medicare provider

---

[1] It is clear that in seeking this information, Plaintiff seeks not to find out what its government is up to, but rather to find out what individual, private physicians are up to.

in the District of Columbia, Illinois, Maryland, Virginia, and Washington in 2004, which was requested by plaintiff. Therefore, the Plaintiff's contribution to public understanding would not be a significant one.

Further, Defendant notes that Plaintiff cannot now add arguments to the administrative record for the fee waiver, and the Court must limit its review to the actual administrative record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii); see also, e.g., Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1311 (D.C. Cir. 2003) (stating that review is "limited to the record before the agency"); Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 35 (D.C. Cir. 1998) (same); Friends of the Coast Fork v. U.S. Dep't of Interior, 110 F.3d 53, 55 (9th Cir. 1997) (stating that court's consideration of fee waiver must be limited to administrative record before agency); Carney v. U.S. Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994) (same); American Fed. of Gov't Employees v. U.S. Dep't of Commerce, 907 F.2d 203, 209 (D.C. Cir. 1990) (same); Prison Legal News v. Lappin, 436 F. Supp. 2d 17, 22, 26 n.4 (D.D.C. 2006) (rejecting submissions not provided to agency administratively); Community Legal Servs., Inc. v. U.S. Dep't of Housing & Urban Dev., 405 F. Supp. 2d 553, 555 (E.D. Pa. 2005) (reiterating that review is limited to administrative record before agency); Southern Utah Wilderness Alliance v. U.S. Bureau of Land Management, 402 F. Supp. 2d 82, 87 (D.D.C. 2005) (same); Judicial Watch, Inc. v. U.S. Dep't of Justice, 133 F. Supp. 2d 52, 53 & n.1 (D.D.C. 2000) (disallowing consideration of information not provided by plaintiff in administrative record).

Plaintiff attempts to add to the administrative record. For example, the first paragraph on page 39 of plaintiff's cross-motion, which provides information regarding the requested raw data being tabulated to display summary information about the Medicare program (such as the total

7

number of procedures performed by specific Medicare providers), discusses an item that was not in the administrative record and should not be considered by the Court. In addition, the Government Accountability Office report mentioned in the Second Krughoff Declaration and on page 41, footnote 40, of the Plaintiff's Cross-Motion was not part of the administrative record and should not be considered by the Court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that the Court grant summary judgment in favor of Defendant.

Dated: May 29, 2007                    Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
ANDREA McBARNETTE, D.C. Bar # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530