### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| CONSUMERS' CHECKBOOK, CENTER | ) | |
| FOR THE STUDY OF SERVICES, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | Civil Action No. 06-2201 (EGS) |
| v. | ) | |
|  | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF HEALTH AND HUMAN SERVICES, | ) | |
| *et al.*, | ) | |
|  | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

### MEMORANDUM OPINION

Plaintiff, Consumer's Checkbook/Center for the Study of Services ("CSS") brings this case to require the federal government defendants to disclose documents responsive to plaintiff's Freedom of Information Act ("FOIA") request and to prevent defendants from assessing fees for fulfilling this request. Pending before the Court are the parties' cross-motions for summary judgment. Upon consideration of the motions and supporting memoranda, the responses and replies thereto, the applicable law, and the entire record, the Court determines that plaintiff is entitled to production of the requested documents in full as well as a fee waiver. Therefore, for the reasons stated herein, plaintiff's motion for summary judgment is **GRANTED**, and defendants' motion for summary judgment is **DENIED**.

1

## BACKGROUND

On March 27, 2006, plaintiff sent to defendant Centers for Medicare and Medicaid Services ("CMS"), which is part of the Department of Health and Human Services ("HHS"), a request for information under FOIA.  Plaintiff sought disclosure of a specified subset of records for Medicare claims from a database maintained by CMS for each of the five following localities: Washington, D.C., Illinois, Maryland, Washington, and Virginia. The records pertained to all Medicare claims submitted by physicians during 2004.  Plaintiff's request for information did not seek any identifying information of Medicare patients.

Also in their March 2006 request, plaintiff sought a fee waiver for the costs associated with fulfilling this request under 5 U.S.C. § 552(a)(4)(A)(iii) and 45 C.F.R. § 5.45.  In support of this claim, plaintiff argued that a fee waiver was appropriate because the requested information would contribute to the public's understanding of the operations of CMS and the Medicare program.  Plaintiff also argued that its commercial interests were not the primary purpose for the request.

On June 26, 2006, CMS denied plaintiff's FOIA request on the grounds that it could not satisfy the request utilizing a reasonable effort.  See 5 U.S.C. § 552(a)(3)(B).  Because the FOIA request was denied, CMS did not address plaintiff's fee

waiver.  On July 25, 2006, plaintiff appealed CMS's denial of the FOIA request.

On December 26, 2006, plaintiff filed its complaint with this Court, which asked the Court to direct the disclosure of the requested documents under FOIA.  Subsequently, on January 29, 2007, CMS revised its ruling on plaintiff's original FOIA request and determined that defendants would be able to produce the responsive documents.  Also in the January 29 letter, CMS denied plaintiff's request for a fee waiver and provided an estimate of the cost of producing the requested documents: $3,944.70 per locality.  CMS recommended that plaintiff narrow the scope of the request and plaintiff complied by temporarily narrowing the scope of the request to relevant data from Washington, D.C. only.  On February 28, 2007, plaintiff appealed the denial of its request for a fee waiver.

Based on their actions in January 2007, defendants filed a motion for summary judgment on March 1, which argued that plaintiff had failed to administratively exhaust its FOIA claim because it had not completed its appeal of the fee waiver determination.  On March 16, 2007, CMS upheld the denial of plaintiff's fee waiver request on appeal for multiple reasons, including that plaintiff had not sufficiently established that its primary interest in the request was not a commercial one. Fee Waiver Appeal Decision, Pl.'s Ex. 1.  In its decision though,

CMS stated that it would release in full and without redaction the requested information for Washington, D.C.

On April 4, 2007, plaintiff filed an amended complaint, which asked the Court to direct the disclosure of all the requested documents, reverse the fee waiver determination, and award attorney fees and costs.  Subsequently, defendants filed a supplement to their motion for summary judgment in which they changed course again and indicated that they would invoke FOIA Exemption 6 to withhold the physician-identifying information in the records requested by plaintiff.  Plaintiff then filed its cross-motion for summary judgment, arguing that FOIA Exemption 6 is not applicable and that it is entitled to a fee waiver.

## STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The party opposing the motion has a duty to submit affidavits or other forms of information to the court to "set forth specific facts

4

showing that there is a genuine issue for trial.  If he does not

so respond, summary judgment, if appropriate, shall be entered

against him." *Celotex Corp.*, 477 U.S. at 322 (citing Fed. R.

Civ. P. 56(e)).  "Rule 56(e) therefore requires the nonmoving

party to go beyond the pleadings and by her own affidavits, or by

the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine

issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

## ANALYSIS

The parties' cross-motions present the Court three issues to

resolve: (1) whether plaintiff has exhausted its administrative

remedies; (2)the applicability of FOIA Exemption 6 to plaintiff's

request; and (3) whether plaintiff's fee waiver request should be

granted.  The first issue is easily disposed of now.  Defendants'

exhaustion argument was based on the fact that plaintiff had not

completed the fee waiver appeal process when defendants filed

their motion for summary judgment.  Since then, the appeals

process has been completed and CMS issued a final decision on the

fee waiver on March 16, 2007.  Therefore, plaintiff has exhausted

its administrative remedies.  *See Oblesby v. Dep't of Army*, 920

F.2d 57, 66 (D.C. Cir. 1990).

## I. FOIA Exemption 6

Under FOIA, an agency may withhold documents responsive to a

FOIA request only if the responsive documents fall within one of

nine enumerated statutory exemptions.  *See* 5 U.S.C. § 552(b);
*Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).
Consistent with the Act's "goal of broad disclosure, these
exemptions have been consistently given a narrow compass," *Tax
Analysts*, 492 U.S. at 151, and there is a "strong presumption in
favor of disclosure." *Dep't of State v. Ray*, 502 U.S. 164, 173
(1991).  The agency bears the burden of justifying any
withholding, and the Court reviews the agency claims of exemption
*de novo*.  *See* 5 U.S.C. § 552(a)(4)(B); *see also Ray*, 502 U.S. at
173-74; *Summers v. Dep't of Justice*, 140 F.3d 1077, 1079-80 (D.C.
Cir. 1998).  To enable the Court to determine whether documents
properly were withheld, the agency must provide a detailed
description of the information withheld through the submission of
a so-called "Vaughn index," sufficiently detailed affidavits or
declarations, or both.  *See Oglesby v. Dep't of the Army*, 79 F.3d
1172, 1178 (D.C. Cir. 1996); *Bigwood v. U.S. Agency for Int'l
Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007).

Exemption 6 of FOIA permits the government to withhold
"personnel and medical files and similar files the disclosure of
which would constitute a clearly unwarranted invasion of personal
privacy."  5 U.S.C. § 552(b)(6).  Under this provision, the first
question is whether the requested information is contained in
personnel, medical, or "similar" files.  *See Dep't of State v.
Washington Post Co.*, 456 U.S. 595, 600 (1982) ("[T]he phrase

'similar files' was to have a broad, rather than a narrow meaning."); *see also Horowitz v. Peace Corps*, 428 F.3d 271, 277 (D.C. Cir. 2005).  In this case, the parties do not dispute that the this first requirement is met.

Second, if the information sought is contained in such files, the Court must assess "whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (citing *Washington Post*, 456 U.S. at 598).  "To determine whether release of a file would result in a clearly unwarranted invasion of personal privacy, [the Court] must balance the private interest involved (namely, 'the individual's right of privacy') against the public interest (namely, 'the basic purpose of the Freedom of Information Act,' which is 'to open agency action to the light of public scrutiny')." *Horowitz*, 428 F.3d at 277-78 (quoting and citing *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372-73 (1976)). The Court must balance the individual's interest in privacy against the public interest in disclosure, keeping at the forefront the FOIA's "basic policy of opening agency action to the light of public scrutiny." *Home Builders*, 309 F.3d at 32 (quoting *Ray*, 502 U.S. at 175).

Under Exemption 6, the "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which

disclosure would serve the 'core purpose of FOIA', which is 'contributing significantly to public understanding of the operations or activities of government.'"  *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994); *see Horowitz*, 428 F.3d at 278.  Throughout this analysis, the burden remains on the government to justify any withholdings, since "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere under the Act."  *Home Builders*, 309 F.3d at 32; *see also Ripskis v. Dep't of Hous. and Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984) ( "[T]he 'clearly unwarranted' language of Exemption 6 weights the scales in favor of disclosure.").

Plaintiff requested information regarding 2004 Medicare claims submitted by physicians.  Plaintiff did not request identifying information for individual patients, but did request information that would allow plaintiff to identify individual Medicare service providers and determine each time a provider performed a particular service or procedure.  Defendants argue that releasing the requested information would also allow plaintiff to combine the information with a publicly available Medicare fee schedule in order to calculate the specific amount that a Medicare provider receives annually in Medicare reimbursements.  Defendants argue that this financial information

would constitute an unwarranted invasion of the personal privacy of Medicare providers.

The public interest at stake is the interest in obtaining information that would help the public make more informed Medicare decisions and the interest in more information of how government funds are spent.  Plaintiff seeks the Medicare records to facilitate useful qualify studies regarding the services provided by Medicare physicians.  Specifically, plaintiff contends that analysis of the requested data will allowed the public to examine, among other things, "(1) whether the government is allowing and paying for Medicare physicians with less-than-optimal levels of experience to perform difficult procedures;" (2) "whether the government is allowing Medicare physicians with insufficient board certifications, histories of disciplinary actions, or poor scores on independent quality assessments to perform high volumes of difficult procedures for which they may not be qualified;" and (3) "whether Medicare physicians are exhibiting practice patterns that conform with existing guidelines (e.g. whether physicians treating patients with specific diagnoses are providing annual exams and screenings recommended for those patients)."  In order to perform these types of analyses, the Medicare claim information must include physician-identifying information linked to each Medicare service or procedure.

Generally, courts acknowledge proper application of
Exemption 6 where the private interest at stake involves the
intimate details of an individual's life.  Where courts have
ruled that Exemption 6 was properly invoked, the documents sought
included an individual's name and address combined with personal
financial information that would invite commercial solicitation,
*Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999), intimate
personal information, such as number and legitimacy of children,
medical history, welfare benefits received, or alcohol
consumption, *Rural Housing Alliance v. U.S. Dep't of Agriculture*,
498 F.2d 73, 77 (D.C. Cir. 1974), or information that exposed an
individual to physical danger, *Judicial Watch, Inc. v. FDA*, 449
F.3d 141, 153 (D.C. Cir. 2006).  *See also Horowitz*, 428 F.3d at
280 (applying Exemption 6 to identity of individual who reported
a sexual assault); *Bigwood*, 484 F. Supp. 2d at 77 (applying
Exemption 6 to identifying information where it created a risk of
physical danger to the individual).

On the other hand, Exemption 6 provides less protection for
information that relates to an individual's business affairs.
*See, e.g.*, *Washington Post Co. v. Dep't of Health and Human
Servs.*, 690 F.2d 252, 261-62 (D.C. Cir. 1982) (holding that
disclosure of agency consultants' non-federal employment "would
be only a minimal invasion of privacy" and that disclosure of
organizations in which consultants have financial interests "does

not amount to a serious invasion"); *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980) ("Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships."); *Board of Trade v. CFTC*, 627 F.2d 392, 399-400 (D.C. Cir. 1980) (finding only a "slight privacy interest" implicated by disclosure of "purely commercial matters").  For instance, in *Washington Post Co. v. United States Department of Agriculture*, 943 F. Supp. 31 (D.D.C. 1996) the court held that the disclosure of names and addresses of individuals and the amount of cotton-farming subsidies they received from the government did not constitute an unwarranted invasion of personal privacy because the disclosed information related to the individual's business interests and there was a strong public interest in understanding the administration of the subsidy program.  *Id.* at 35-37.  Similarly, in *Multi AG Media LLC v. Department of Agriculture*, Civil No. 05-1908, 2006 WL 2320941 (D.D.C. Aug. 9, 2006), the court held that the disclosure of information regarding an individual's financial assets – livestock in this case – did not constitute an unwarranted invasion of personal privacy because the privacy interest was outweighed by the public interest in understanding the administration of the subsidy program at issue.  *Id.* at *4-5.

In line with this consistent interpretation of Exemption 6, the Court concludes that the exemption does not apply in this

11

case.  The information plaintiff requests to be disclosed
concerns only the business income of the physicians involved and
not intimate facts about their personal lives.  As in the two
Department of Agriculture cases, plaintiff solely seeks
information related to payments made by the government in order
to better understand the functioning of the government program.
*See Washington Post*, 943 F. Supp. at 35-37; *Multi AG Media*, 2006
WL 2320941, at *4-5.  Furthermore, the information that the
defendants are concerned about releasing – the annual amounts of
Medicare reimbursements paid to an individual physician – will
not necessarily indicate to the general public the annual salary
of each physician.  It will merely reflect a portion of the
physician's income.  There will be no other financial information
about the practitioner's business; the data will merely indicate
the amount of government funds individual practitioners received.
Because plaintiff needs physician-identifying information to
conduct its analysis of Medicare services, the minimal privacy
interests of physicians in the amount of government funds they
receive is outweighed.

    Two district court cases from 1979 support the conclusion
that Exemption 6 does not apply.  In *Florida Medical Association,*
*Inc. v. Department of Health, Education, and Welfare*, 479 F.
Supp. 1291 (M.D. Fla. 1979), at issue was whether Exemption 6
covered the disclosure of information concerning the annual

amounts of reimbursements paid to Medicare providers in a way that would individually identify some of the providers.  *Id.* at 1294.  The public interest asserted in favor of disclosure was "knowing the amounts of public funds spent in reimbursing Medicare providers annually, especially in light of the ongoing legislative debate over national health insurance."  *Id.* at 1304.  The court found, however, that this public concern was not advanced by revealing the identity of individual provides and their reimbursement amounts, and therefore held that the disclosure fell within Exemption 6.  *Id.* at 1305.[1]

In contrast to the Florida case, a case from this district presents a situation much closer to the one at bar.  In *Public Citizen Health Research Group v. Department of Health, Education, and Welfare*, 477 F. Supp. 595 (D.D.C. 1979), *rev'd on other grounds by* 668 F.2d 537 (D.C. Cir. 1981), at issue was whether Exemption 6 covered the disclosure of physician profiles of certain Medicare providers and several studies of Medicare services.  *Id.* at 598-99.  The government contended that the privacy interests of the physicians took precedent over the disclosure.  The court concluded, though, that the disclosure "that a physician performs a large number of surgical procedures,

---

[1] As a remedy, the court entered a permanent injunction apparently barring the proposed disclosure.  *See id.* at 1311.  Defendants in this case indicate that they are still subject to this injunction.  As plaintiff seeks different records, however, the injunction is immaterial to this Court's analysis.

or has requests for extension in hospital denied regularly, does not possess that 'intimacy' which has protected records" under Exemption 6.  *Id.* at 604.  The physicians' privacy interests were instead outweighed by "the interest in enabling the consuming public to make more fully informed choices among individual physicians and hospitals rendering Medicare and Medicaid services," as well as the interest in assisting physicians making referrals and academics researching health care issues.  *Id.*  The disclosure in question essentially served to scrutinize government performance, which the court noted is at the core of FOIA.  *Id.*  Finally, the court noted that the disclosures did not reveal a physician's entire professional dealings, but only information regarding services compensated out of public funds, and concluded that such disclosures of "quasi-public" functions did not implicate significant privacy interests for the physicians.  *Id.*  Therefore, the court held that the disclosures were not covered by Exemption 6.  *Id.* at 605.

The documents sought by plaintiff in this case are of the same nature as those sought in both of these 1979 cases, but the interests that plaintiff asserts more closely match those in the *Public Citizen* case.  Plaintiff here is similarly looking for data to assist in the performance evaluation of Medicare providers, and the interests plaintiff seeks to meet require that the data include physician-identifying information.  Moreover,

the physician data also only involves information related to the physicians' participation in and compensation from a government program, and thus only implicates very limited privacy interests. *See Washington Post*, 943 F. Supp. at 35-37; *Multi AG Media*, 2006 WL 2320941, at *4-5.   Therefore, the Court concludes that disclosure of the physician information is not "clearly unwarranted" in light of the important public interests at stake. *See Public Citizen*, 477 F. Supp. at 605.

## II. Fee Waiver Determination

FOIA allows for a fee waiver to eligible requesters when the information sought is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 60 (D.D.C. 2002).  HHS has promulgated regulations implementing the standard for granting a fee waiver in a two-part test.  To obtain a fee waiver the requester must first prove that the information sought is in the public interest "because it is likely to contribute significantly to public understanding of the operations or activities of the government." 45 C.F.R. § 5.45(a)(1).  Second, the requester must prove that the information it seeks is not primarily in its commercial interest.  *Id.* § 5.45(a)(2).  For each prong of the test, HHS has

15

specified several factors to consider in making the determination.  *Id.* § 5.45(b), (c).[2]

A court's review of an agency ruling on a fee waiver request is *de novo*, but is limited to the record that was before the agency.  5 U.S.C. § 552(a)(4)(A)(vii); *Physician's Comm.*, 480 F. Supp. 2d at 121.  The burden of proving that a party is eligible for a fee waiver is on the party requesting the waiver. *Physician's Comm.*, 480 F. Supp. 2d at 123.  The requesting party must also "assert[] with reasonable specificity" the public interest.  *Id.*  Finally, "FOIA, as amended in 1986, 'is to be liberally construed in favor of waivers for noncommercial requesters.'"  *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Health and Human Servs.*, 481 F. Supp. 2d 99, 106 (D.D.C. 2006) (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir.1987)).

**A. Public Interest**

According to the HHS regulations, four factors are relevant to the evaluation of the requester's contribution to the public interest:

_____

[2]  The agency's interpretation of FOIA in these regulations has not been questioned by the parties and thus will be utilized by the Court.  See *Physician's Comm. for Responsible Med. v. Dep't of Health and Human Servs.*, 480 F. Supp. 2d 119, 122 n.3 (D.D.C. 2007).

(1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?

(2) Would disclosure of the records reveal any meaningful information about government operations or activities? Can one learn from these records anything about such operations that is not already public knowledge?

(3) Will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons? . . .

(4) Will the contribution to public understanding be a significant one? Will the public's understanding of the government's operations be substantially greater as a result of the disclosure?

45 C.F.R. § 5.45(b)(1)-(4).  With respect to the first two public interest factors, CMS agreed with plaintiff in its appeal decision that "the requested records pertain to operations or activities of the Federal Government and that the disclosure of the records would reveal meaningful information about government operations or activities."  Fee Waiver Appeal Decision at 2. Thus, these factors are not issue in this case.

With regard to the third factor, defendants argue that plaintiff failed to adequately demonstrate that disclosure of the requested information would advance the understanding of the general public as compared to a smaller group of individuals. Plaintiff, in the fee waiver appeal letter to CMS, provided CMS with a detailed description of how it had previously disseminated similar information to the general public, and thus how it expected to disseminate the records requested in this case.

17

Plaintiff's Appeal Letter, Ex. H to Am. Compl., at 3-4.
Plaintiff specified that information would be distributed through
its magazine, which has approximately 110,000 subscribers.
Results of studies would also be distributed through press
releases and would be covered by numerous major media outlets.
As an example, plaintiff noted that it has an ongoing
relationship with one of the local television channels in
Washington, D.C. to cover plaintiff's reports on a morning news
program.  Plaintiff also indicated that some content would be
freely available on its website.  Finally, plaintiff pointed to
an evaluation of hospitals that it produced in 2002 where its
findings were publicized and then reported by more than 125
newspapers and TV and radio stations.

Defendants contend that plaintiff's purported plan is
inadequate because plaintiff charges for access to some of its
information (though its magazine or website) and plaintiff's
appeal did not specify how much it would charge consumers for the
information in the requested records.  Nonetheless, plaintiff's
description of its publication methods is sufficient.  In
*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003),
the D.C. Circuit found that the FOIA requester sufficiently
described its publication methods by generally describing
numerous avenues of publication and detailing past efforts.  *Id.*
at 1314.  Similarly, in *Judicial Watch, Inc. v. U.S. Dep't of*

*Justice*, 185 F. Supp. 2d 54 (D.D.C. 2002), the court found it sufficient that the requester had "described several methods it uses to make information available to the public, it has a record of conveying to the public information obtained through FOIA requests, and it has stated its intent to do so in this case." *Id.* at 62.  As plaintiff has done the same here, the Court concludes that the third factor has been met.

With regard to the fourth factor, defendants contend that plaintiff has not demonstrated that the requested disclosure will result in a significant gain in public understanding of the government.  Plaintiff, in its fee waiver appeal letter to CMS, stated that the benefit to the public will be significant because the requested records will allow for analysis of Medicare services that is not presently available.  For instance, plaintiff pointed to studies showing that for some medical procedures, physicians that perform a high volume of the procedures produce superior quality outcomes for their patients. Plaintiff's Appeal Letter at 4.  The requested records will allow plaintiff to analyze this indicator of quality for Medicare providers and publish results.

Defendants contend that the plaintiff's purported public benefit is insignificant because plaintiff's publications could not convey the full amount of data in the records requested.  It seems clear, however, that the public would most fully benefit

from the requested data if it is analyzed and synthesized by a research organization, such as the plaintiff, and published in a useful form.  Defendants also contend that the data sought by plaintiff will not be able to produce "an overall quality analysis."  *See* Fee Waiver Appeal Decision at 3.  Even if plaintiff though is only able to provide a partial measure of the overall quality of Medicare services, such a contribution would still be a significant public benefit considering the complexity and importance of the Medicare program.  Therefore, the Court concludes that plaintiff satisfies the fourth factor.  As plaintiff thus meets all four public interest factors, plaintiff satisfies the public interest prong of the fee waiver test.

**B. Commercial Interest**

According to the HHS regulations, if the public interest prong is satisfied, the next step is to "determine whether it also furthers the requester's commercial interest and, if so, whether this effect outweighs the advancement of that public interest."  45 C.F.R. § 5.45(c).  Two factors are considered in making this determination:

> (1) Would the disclosure further a commercial interest of the requester, or of someone on whose behalf the requester is acting? "Commercial interests" include interests relating to business, trade, and profit. Not only profit-making corporations have commercial interests – so do nonprofit corporations, individuals, unions, and other associations. The interest of a representative of the news media in using the information for news dissemination purposes will not be considered a commercial interest.

20

> (2) If disclosure would further a commercial interest
> of the requester, would that effect outweigh the
> advancement of the public interest defined in paragraph
> (b) of this section? Which effect is primary?

45 C.F.R. § 5.45(c)(1)-(2).  Defendants contend that plaintiff

has a commercial interest in the disclosure at issue and there is

evidence in the record to support that contention.  While

plaintiff did indicate that information gained from the

disclosure would be distributed through means free for consumers,

such as by media reports or freely on plaintiff's website, there

are also indications that some means of dissemination may require

payments by consumers.  It is undisputed that plaintiff has

previously charged consumers $19.95 or $24.95 for its special

reports, or required them to pay subscription fees for

plaintiff's magazine and access to sections of its website.  *See*

Fee Waiver Appeal Decision at 4.  Thus, it appears likely that

some information from the requested records will only be

available to the public for a fee.  Therefore, the disclosure

furthers a commercial interest of plaintiff.

Considering the second factor, however, the Court concludes

that plaintiff's commercial interest does not outweigh the

advancement of the public interest here.  It is undisputed that

plaintiff is a nonprofit organization.  Moreover, plaintiff's

operations are "fully funded through subscription and publication

sales, fees for survey and information services, and consumer

donations" because plaintiff does not accept any advertising.

2007 Press Report attached to Plaintiff's Appeal Letter, Ex. H to
Am. Compl., at 11.  The D.C. Circuit has held that the "fact that
a bona fide scholar profits from his scholarly endeavors is
insufficient to render his actions 'primarily . . . commercial'
for purposes of calculating a fee waiver, as Congress did not
intend for scholars (or journalists *and public interest groups*)
to forego compensation when acting within the scope of their
professional roles."  *Campbell v. U.S. Dep't of Justice*, 164 F.3d
20, 35-36 (D.C. Cir. 1998) (emphasis added).  Thus, the fact that
plaintiff charges fees in order to produce and distribute its
work does not render its interests "primarily commercial."  To
the contrary, as plaintiff does not operate for profit, and
charges fees only in order to support its operations because it
does not accept advertising, its primary interest is in
distributing useful consumer information to the public.
Therefore, the Court concludes that plaintiff's primary interest
in the requested records is not commercial, and thus plaintiff is
entitled to a fee waiver.  *See* 45 C.F.R. § 5.45(a).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary
judgment is **GRANTED** and defendants' motion for summary judgment
is **DENIED**.  Accordingly, defendants are directed to provide
plaintiff a complete production of the records requested by
plaintiff for all localities by no later than September 21, 2007,

and must waive the fees for plaintiff.  An appropriate Order,

which includes further instructions, accompanies this Memorandum

Opinion.


**Signed:**     **Emmet G. Sullivan**
               **United States District Judge**
               **August 22, 2007**